# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **MICHAEL RAY CLEVELAND, SR.** | **CASE NO. 19-cv-0389** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Michael Cleveland filed the instant application for Title II Disability Insurance Benefits on, or about October 8, 2013. (Tr. 229-230). He alleged disability as of September 27, 2013, because he broke his ankle at work and had to have surgery on his "ankles." (Tr. 261, 272). The state agency denied the claim at the initial and reconsideration stages of the administrative process. (Tr. 136-154). Thereafter, Cleveland requested and received a January 30, 2015, hearing before an Administrative Law Judge ("ALJ"). (Tr. 116-134). Subsequent to the hearing, the ALJ received additional medical evidence from plaintiff's treating physician (Tr. 349-352), which the ALJ apparently relied upon to find that Cleveland was not disabled under the Social Security Act.[1] Cleveland petitioned the Appeals Council to review the unfavorable

---

[1] The ALJ's original decision is not in the administrative record. However, in plaintiff's

decision. On October 25, 2016, the Appeals Council granted the request for review, and remanded the case for further proceedings, apparently because plaintiff did not have an opportunity to review and address this evidence that the ALJ relied upon in her original decision. *See* Tr. 69.[2]

Pursuant to the remand order, the same ALJ held a second administrative hearing in the matter on August 21, 2017. (Tr. 86-115). However, in an April 6, 2018, written decision, the ALJ again determined that Cleveland was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that he was able to return to his past relevant work as a tractor-trailer truck driver -- as that job is generally performed in the national economy. (Tr. 66-81). Cleveland appealed the adverse decision to the Appeals Council. On January 28, 2019, however, the Appeals Council denied Cleveland's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On March 28, 2019, Cleveland sought review before this court. He alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ did not fully and fairly develop the record and failed to consider all of the evidence. He seeks reversal, with instructions to award benefits.[3] Following the submission of briefs, the matter is ripe.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the

---

statement of material facts, he indicated that the ALJ's original decision was unfavorable. (Statement of Material Facts [doc. # 18-1]).

[2] The Appeals Council's remand order is not in the record.

[3] Plaintiff stated that, pursuant to a subsequent application, he was found disabled from October 2018 forward. (Statement of Material Facts [doc. # 18-1]). Therefore, the present inquiry is limited to the period before that date.

2

ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple

impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 71-72). At step two, she found that the claimant suffered severe impairments of left ankle fracture status-post open reduction internal fixation (ORIF) with post-traumatic arthritis, gout, history of lumbar fusion at L5-S1 with multilevel degenerative changes; diabetes mellitus; and chronic kidney disease. (Tr. 72-73).[4] The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 73).

### II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform medium work,[5] except that he was limited to occasional climbing,

---

[4] She further found that the claimant's medically determinable impairments of hypertension, hyperlipidemia, obesity, presbyopia, mild tortuosity, and cataracts were non-severe. *Id*. She also determined that his complaint of left shoulder pain was not a medically determinable impairment. *Id*.

[5] Medium work is defined and explained by Social Security Ruling 83-10:

> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

balancing, stooping, kneeling, crouching, and crawling. (Tr. 73-80).

### III. Step Four

At step four, with the assistance of a vocational expert, the ALJ, determined that the claimant was able to return to his past relevant work as a tractor-trailer truck driver, Dictionary of Occupational Titles ("DOT") Code # 904.383-010, as that work is performed generally in the national economy. (Tr. 80, 111-114, 132).[6]

### **Non-Exhaustive Chronology of Relevant Medical Evidence**

On September 27, 2013, Cleveland was seen at the Northeast Alabama Regional Medical Center following a fall and injury to his left ankle. (Tr. 329-330). He was unloading groceries from a truck and rolling a heavy dolly down a ramp when he lost control of the dolly and fell. *Id.* He fractured his left ankle in the fall. *Id.* That same day, he underwent open reduction

---

> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

*Social Security Ruling 83-10*: TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2 (SSR 83-10).

[6] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

6

and internal fixation of distal fibular fracture surgery. (Tr. 327-328). He was diagnosed with comminuted distal fibular fracture with syndesmosis, deltoid ligament disruption, and lateral subluxation, left ankle. *Id.* Cleveland was discharged from the hospital on September 29. 2013. (Tr. 331-332).

Plaintiff returned to his treating orthopedist, Kenneth Vandervoort, M.D., on October 11, 2013. (Tr. 334). Dr. Vandervoort noted that it had been two weeks since the repair of the distal fibula syndesmosis of the left ankle, and the wound was healing well. *Id.* Plaintiff was to remain non-weight bearing. *Id.* He could not return to work as a truck driver for the next two to three months. *Id.*

On October 30, 2013, plaintiff returned to Dr. Vandervoort who noted that x-rays showed good alignment. (Tr. 335). He was placed in a premium walker boot. *Id.* Vandervoort instructed Cleveland not to do any more than touch-down weightbearing. *Id.* He further advised Cleveland on some gentle range of motion flexibility exercises. *Id.* Vandervoort released Cleveland for sit-down work. *Id.*

Plaintiff returned to Dr. Vandervoort on November 20, 2013. (Tr. 336). X-rays showed good alignment of the ankle mortis. *Id.* He had moderate swelling, with stiffness. *Id.* Vandervoort stated that Cleveland could start partial and then full weightbearing, as tolerated. *Id.* He wrote a prescription for physical therapy. *Id.*

On December 5, 2013, Dr. Vandervoort felt that plaintiff could progress to a lace-up ankle brace. (Tr. 337). He removed the screws from plaintiff's ankle on January 10, 2014. (Tr. 242).

On January 16, 2014, non-examining agency physician, Hector Manlapas, M.D.,

7

reviewed the record and determined that plaintiff's medically determinable impairment did not meet the one-year durational requirement for disability.[7]   (Tr. 138-140).

Cleveland next returned to Dr. Vandervoort on February 26, 2014.   (Tr. 341).   On examination, Cleveland's ankle remained moderately enlarged.   *Id*.   He had a limited range of motion especially with extension of the ankle.   *Id.*   Physical therapy felt that he was making slow but steady progress.   *Id.*   Vandervoort stated that he would continue physical therapy three times per week for another four weeks for range of motion and strengthening.   *Id*.   He advised Cleveland to wean himself off of his cane use.   *Id*.   Vandervoort released him to sit-down work.   *Id.*   He did not feel that Cleveland was capable of returning to work as a truck driver at that time.   *Id.*   He discontinued narcotics for pain.   *Id.*

On March 6, 2014, plaintiff saw Sudha Pandit, M.D., for follow-up of hypertension, diabetes mellitus, and hyperlipidemia.   (Tr. 383-384).   His hypertension and diabetes mellitus were well-controlled.   *Id.*   His hyperlipidemia was controlled.   *Id.*

On March 26, 2014, Dr. Vandervoort noted that plaintiff was six months post-accident.   (Tr. 340).   Cleveland had had a fairly prolonged, slow healing phase with a good bit of residual pain swelling and limited range of motion.   *Id.*   He had received extensive physical therapy.   *Id.*   His screws had been removed two months earlier.   *Id.*   Cleveland walked with a cane and had a mild to moderate antalgic gait without the cane.   *Id.*   Range of motion of the left ankle was limited 10-15 degrees extension and moderate limitation with inversion/eversion.   *Id.*   The ankle was moderately enlarged.   *Id.*   Vandervoort assessed post-traumatic arthritis following ankle fracture with open reduction internal fixation left.   *Id.*   He felt that Cleveland had reached

---

[7] *See* 42 U.S.C. § 423(d)(1)(A).

8

maximum medical improvement and recommended that he undergo a functional capacity evaluation ("FCE"). *Id.* In the meantime, Vandervoort kept him on sit-down work. *Id.*

On March 28, 2014, non-examining agency physician, Johnny Craig, M.D., reviewed the record and opined that plaintiff's physical impairments were non-severe. (Tr. 144-145).

On April 3, 2014, plaintiff saw Karen Small, M.D., for complaints of blurry vision at near. (Tr. 384-386). However, he saw well at distance without glasses. *Id.* Dr. Small diagnosed no retinopathy, and prescribed over-the-counter reading glasses. *Id.*

On May 12, 2014, plaintiff returned to Dr. Vandervoort, who noted that plaintiff had undergone an FCE and impairment rating about one week earlier. (Tr. 350). The reports, however, were difficult to read. *Id.* On examination, plaintiff still had moderate swelling and was walking with a cane. *Id.* He could walk without the cane with a mild to moderate gait disturbance. *Id.* Vandervoort kept plaintiff on work restrictions of sit-down work, not standing or walking over two hours per day and no climbing. *Id.* He remarked that, after he had reviewed the FCE, he intended to make permanent work recommendations. *Id.*

On May 28, 2014, Dr. Vandervoort dictated a note to address plaintiff's FCE. (Tr. 352). He stated that plaintiff was eight "weeks" [sic] out from a right ankle fracture that had developed post-traumatic arthritis. *Id.* The FCE recommended that Cleveland could perform work in the heavy work category with occasional lifting below waist level up to 64 pounds, overhead lifting up to 29 pounds, carry up to 60 pounds, and push and pull up to approximately 150 pounds. *Id*. Kneeling, climbing, and repetitive squatting were limited to occasional. *Id.* He could sit, stand, or walk on a constant basis. *Id.* The FCE clinical reviewer felt that so long as plaintiff's work as a truck driver did not exceed the foregoing limitations then he could return to that work.

9

*Id.*  Dr. Vandervoort concurred.  *Id.*

On July 28, 2014, plaintiff saw Anand Desai, M.D. for follow-up of diabetes mellitus and hypertension, plus complaints of left ankle pain.  (Tr. 390-392).  Cleveland recounted that his ankle had been bothering him with a limited range of motion.  *Id.*  He took Tylenol for pain.  *Id.*  He had mild left lower extremity swelling.  *Id.*  Desai referred Cleveland to orthopedic surgery for his ankle pain.  *Id.*  An x-ray of plaintiff's left ankle was taken on July 29, 2014.  (Tr. 439).

On November 3, 2014, plaintiff returned to Dr. Desai with left lower extremity pain where he had had surgery.  (Tr. 392-394).  The orthopedic referral had been denied.  *Id.*  Review of systems was positive for left lower extremity ankle swelling and pain, but otherwise negative including back pain.  *Id.*  Desai intended to resubmit Cleveland to the orthopedic clinic.  *Id.*

On November 18, 2014, plaintiff went to see Jeffrey Davis, M.D. for an independent medical examination.  (Tr. 345-348).  Cleveland reported that he was limited in what he was able to do and still used a cane for ambulation.  *Id.*  He reported some pain going up his leg and described occasional shooting pain.  *Id.*  He also had some numbness in his left foot.  *Id.*  He reported some pain in his left shoulder.  *Id.*  He still had not returned to work.  *Id.*  Cleveland rated his pain as about a nine on a ten-point scale.  *Id.*  Examination of plaintiff's gait pattern showed an obvious limp.  *Id.*  He avoided push-offs with his left lower extremity.  *Id.*  He walked with a flatfoot gait and landed flatfoot.  *Id.*  Consequently, he had a fairly significant limp.  *Id.*  Examination of the left shoulder showed near full range of motion.  *Id.*  He had pain on full elevation, just short of a few degrees of normal.  *Id.*  His strength was good.  *Id.*

Impingement maneuver was negative. *Id.* Examination of his back showed good range of motion with flexion to about 80 degrees; extension was about ten to fifteen degrees without a lot of discomfort. *Id.* Examination of the hip showed good range of motion. *Id.* Examination of the knees showed full range of motion. *Id.* His left ankle and calf were 2 cm larger than on the right side. *Id.* He had visible swelling in the ankle and was exquisitely tender over the medial side of the ankle. *Id.* He was very weak with posterior tibial or peroneal testing. *Id.* His range of motion showed -5 degrees of extension to about 40 degrees flexion. *Id.* Motor function and everything appeared to be intact. *Id.* His tibial nerve sensation on the plantar surface of the foot was normal. *Id.* X-rays of the ankle showed that it appeared to have healed satisfactorily. *Id.* Davis opined that Cleveland likely had continuing left ankle syndesmotic injury with pain and some early posttraumatic arthritis. *Id.*

     Davis believed that Cleveland needed further workup for his ankle. *Id.* He stated that Cleveland might benefit from further evaluation such as an MRI and might need an arthroscopy or perhaps even repeat syndesmosis repair in order to provide more stability to the ankle and more function to it. *Id.* Davis did not think that there was any way that Cleveland could return to constantly being on his feet. *Id.* He also thought that he would have a difficult time driving a vehicle or truck with a manual transmission that required repetitive pushing on the clutch with the left lower extremity. *Id.* Standing and walking would be limited to at most an occasional basis during the workday with breaks. *Id.* He was unrestricted in driving an automatic vehicle, but could not drive a manual transmission on a consistent basis at all. *Id.* Davis concluded that Cleveland had a 15% whole person impairment. *Id.*

11

On May 5, 2015, plaintiff saw Ann Floyd, M.D., for complaints of blurry vision, near. (Tr. 394-396). Floyd found no retinopathy, but recommended over-the-counter reading glasses. *Id.*

On May 7, 2015, plaintiff returned to Dr. Pandit. (Tr. 396-398). His diabetes was uncontrolled because he had not been taking his medication. *Id.* There was no diagnosis associated with his ankle pain. *Id.*

On June 18, 2015, plaintiff was seen by Rishi Arora, M.D. (Tr. 398-400). There was no diagnosis for ankle pain. *Id.*

On August 20, 2015, plaintiff again returned to Dr. Pandit. (Tr. 400-401). His chronic ankle pain was stable. *Id.* There was no associated diagnosis. *Id.*

On December 14, 2015, plaintiff saw Dr. Grandon for chronic disease management. (Tr. 374).

On January 14, 2016, plaintiff returned to Dr. Pandit. (Tr. 401-403). His chronic left ankle pain was stable with Tylenol. *Id.* Ditto on April 28, 2016. (Tr. 403-405).

On May 10, 2016, plaintiff saw Kim Dinh, M.D., for an eye examination. (Tr. 405-407). He had no visual complaints. *Id.* He used over-the-counter reading glasses. *Id.*

On July 28, 2016, plaintiff saw Nour Nakrour, M.D. (Tr. 407-411). Review of systems was positive for left ankle swelling and discomfort when taking his daily, three to four-mile long walks. *Id.* Otherwise, he was negative for joint pain. *Id.* Upon examination, he exhibited no edema in the distal extremities and no joint swelling. *Id.* His left ankle showed no apparent deformity, mild tenderness, with range of motion intact in all directions. *Id.* Strength and sensation were full in all extremities. *Id.* Pinprick sensation was intact throughout the lower

12

extremities bilaterally.  *Id.*  Dr. Nakrour did not assign a diagnosis for plaintiff's ankle pain. *Id.*

On October 27, 2016, plaintiff returned to Dr. Nakrour.  (Tr. 411-415).  He still was walking four miles per day.  *Id.*  Review of systems and examination were negative for joint pain and swelling.  *Id.*  There was no diagnosis for his ankle.  *Id.*

Plaintiff saw Dr. Nakrour again on February 2, 2017.  (Tr. 415-418).  Review of systems was negative for joint pain, swelling, etc.  *Id.*  Upon examination, he had no edema in the distal extremities or joint swelling. *Id.*  There was no diagnosis for his ankle.  *Id.*

On May 16, 2017, plaintiff saw Peter Lam, M.D., for an eye examination.  (Tr. 419-421).  He had no visual complaints.  *Id.*  He used over-the-counter reading glasses.  *Id.*

On July 3, 2017, Cleveland saw Tom Colvin, M.D., at Fairbanks Orthopedics.  (Tr. 443-447).  Plaintiff reported new left sciatica and new left ankle pain.  *Id.*  He stated that his usual pain level for his low back was a seven on a ten-point scale, which he rated as moderate-to-severe.  *Id.*  Functional impairment was moderate.  *Id.*  When present, the low back pain interfered only with some daily activities.  *Id.*  Plaintiff described his left ankle pain as a seven on a ten-point scale.  *Id.*  Functional impairment from this pain was moderate.  *Id.*  There was no radiating pain, numbness, or tingling.  *Id.*  The pain was aggravated by all physical activities and walking one block.  *Id.*  He had a mild antalgic gait.  *Id.*  Upon examination, the cervical spine had a normal range motion, muscle strength, and tone.  *Id.*  He had severe straightening of the lumbar lordosis.  *Id.*  He also had moderate tenderness of the lumbar spine, with moderate muscle spasms.  *Id.*  He was able to walk on his toes.  *Id.*  His left foot plantar was normal.  *Id.*  Straight leg raising was negative on the right, but positive on the left.  *Id.*  He had

13

no ankle tenderness or swelling. *Id.* However, he had a positive anterior drawer test. *Id.* Colvin diagnosed idiopathic gout, left ankle and front; post-laminectomy syndrome; and long-term use of opiate analgesic. *Id.*

On July 7, 2017, plaintiff saw Dr. Grandon for a possible insect bite to his right calf that had been present for about two to three months. (Tr. 366-368). Grandon diagnosed eczema. *Id.*

An August 1, 2017, MRI of the lumbar spine showed congenital spinal canal stenosis which was exacerbated by multilevel degenerative changes. (Tr. 456-457). There also was multi-level degenerative changes causing variable degrees of spinal canal and neural foraminal narrowing. *Id.*

On August 8, 2017, plaintiff returned to Dr. Colvin. (Tr. 448-451). He described his low back pain as an eight on a ten-point scale. *Id.* The pain was present constantly. *Id.* It was aggravated by all activities and repetitive lifting. *Id.* His need for pain medication for his ankle had decreased. *Id.* His pain ranged from a seven to nine on a ten point scale. *Id.* Straight leg testing was negative bilaterally. *Id.* He had some mild swelling in his left ankle. *Id.* Muscle strength was 5/5. *Id.* An August 8, 2017, MRI showed multi-level thecal impingement. *Id.*

On August 15, 2017, plaintiff saw Dr. Grandon for chronic disease management. (Tr. 363-366). Upon review of systems, plaintiff had no tenderness and no cyanosis or edema in the extremities. *Id.* Grandon diagnosed type II diabetes mellitus, without complications; hyperlipidemia; essential hypertension; and chronic kidney disease stage 3. *Id.*

On August 31, 2017, plaintiff was seen by Derek Munoz, M.D. (Tr. 421-424). Review

14

of systems was negative for joint pain, swelling, etc. *Id.* Upon examination, there was no edema in distal extremities and no joint inflammation. *Id.*

On September 6, 2017, plaintiff returned to Dr. Colvin. (Tr. 452-455). His lumbar pain was moderate to severe. *Id.* Repetitive lifting aggravated his pain. *Id.* His left ankle mobility had improved. *Id*. His pain ranged from a three to a five. *Id.* He rated the extent to which ankle pain interfered with his general activities as a one on a ten-point scale. *Id.* He had moderate straightening of the normal lordosis, mild tenderness, and negative straight leg raise bilaterally. *Id.* He had trace tenderness in his left ankle and no swelling. *Id.* Muscle strength was 5/5. *Id.*

The administrative record also contains additional medical reports that plaintiff sent to the Appeals Council, in the wake of the ALJ's unfavorable decision. *See* Tr. 7-65. However, the regulations provide that the Appeals Council will review a case, among other reasons, if "[s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Appeals Council considered the additional evidence submitted by plaintiff but determined that it did not relate to the period at issue. (Tr. 2). Moreover, plaintiff did not provide good cause for the untimely submission. 20 C.F.R. § 404.970(b).[8]

---

[8] Ordinarily, "the mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted).

15

## Analysis

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, the medical treatment history, and the findings of the treating, consultative, and non-examining physicians. (Tr. 74-80). In deriving plaintiff's RFC, the ALJ resolved the opinion evidence by assigning "great" weight to the opinions of Drs. Vandervoort and Craig (as to the effects of plaintiff's hypertension only), but "little" weight to the remainder of the medical opinions, including that of Dr. Davis. (Tr. 77-79).

Plaintiff contends that the ALJ erred when she credited the opinion of Dr. Vandervoort, in lieu of the findings of Dr. Davis. Plaintiff argues that Dr. Vandervoort's May 28, 2014, adoption of the results of an unidentified FCE is suspect because the underlying FCE does not appear in the record, and because Dr. Vandervoort mistakenly indicated that plaintiff was eight *weeks* post-ankle fracture and surgery, instead of eight *months* post-fracture. In other words, plaintiff argues that the Commissioner erred by failing to obtain all of his medical records.

It is well-established that, "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996). Furthermore, when, as here, a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted).

The ALJ's failure to develop an adequate record, however, does not automatically compel reversal. *Id*. Rather, to obtain reversal because of an ALJ's failure to adequately develop the record, the claimant also must demonstrate resulting prejudice. *Brock, supra*. "To establish prejudice, a claimant must show that he could and would have adduced evidence that

16

might have altered the result." *Id.* (internal quotation marks omitted). Mere speculation that additional evidence might have made a difference does not suffice. *Hyde v. Astrue,* Docket No. 07-30748 (5th Cir. May 12, 2008) (unpubl.) *(citing Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984)).

As an initial matter, the court notes that plaintiff, himself, told the ALJ about the existence of the FCE during the first hearing held in January 2015. *See* Tr. 127-128. The ALJ told plaintiff that she wanted a copy of the FCE and that she would write to Anniston Orthopedics to obtain a copy of his updated records. (Tr. 128, 133). In fact, plaintiff told the ALJ that the doctor at Anniston Orthopedics would provide her with a copy of the FCE. (Tr. 128). Moreover, plaintiff offered to drive to Vicksburg, where the FCE was performed, to obtain a copy for the ALJ. (Tr. 133).

After the hearing, the ALJ proceeded to obtain updated medical records from Anniston Orthopedics, which included the May 28, 2014, dictated note from Dr. Vandervoort that ultimately formed the basis for the ALJ's RFC. (Tr. 349-352). However, the Appeals Council remanded the matter to the ALJ because the ALJ apparently failed to allow plaintiff an opportunity to respond to this new evidence. Upon remand, plaintiff did not obtain a copy of the FCE from the facility at Vicksburg where the evaluation was performed. Moreover, there is no indication that he provided the ALJ with the name of the company or facility that performed the evaluation so that the ALJ could have obtained the records. *See* Tr. 133 (the ALJ told plaintiff that it would help if he could provide the name of the company that performed the evaluation).

In other words, it is precisely because the ALJ took additional steps to develop the record that she succeeded in obtaining Dr. Vandervoort's recitation and adoption of the limitations from the FCE. Now, some four-plus years later, plaintiff cries foul. However, the Appeals Council

17

remanded this case once before to permit plaintiff to address Dr. Vandervoort's opinion, but he did not avail himself of that opportunity. There is nothing to suggest that if the ALJ again had sought updated records from Dr. Vandervoort that, this time around, his office would have discovered the FCE and produced it.

Accordingly, the court finds that the ALJ did not fail in her duty to fully and fairly develop the record. Even if she had, plaintiff has not demonstrated resulting prejudice. Despite supplementing the record with additional treatment records pursuant to his request for review to the Appeals Council, plaintiff did not supplement the record with the missing, underlying FCE. He also did not provide a copy of the FCE in his appeal to this court. Plaintiff's mere speculation that the underlying FCE might differ from Dr. Vandervoort's characterization of it does not suffice to demonstrate prejudice. *Hyde, supra*.

Insofar as plaintiff contends that the ALJ should have re-contacted Dr. Vandervoort, the court observes that the Commissioner *may* recontact a medical source if the Commissioner is unable to render a decision because the evidence is insufficient or inconsistent. 20 C.F.R. § 404.1520b (2016). Here, however, there is no indication that the evidence was so insufficient or inconsistent that the ALJ was unable to render a decision. Even if it were, the ALJ is not *required* to re-contact the medical source.

In the end, the ALJ credited Dr. Vandervoort's opinion over the findings of Dr. Davis because the former was plaintiff's treating orthopedist, whereas the latter was a one-time

consultative physician.[9]  This rationale constitutes good cause.[10]  The ALJ, however, did not stop there.  She also recited and considered the remainder of the medical record, including the numerous instances where plaintiff had little or no complaints related to his ankle.  She further noted the treatment visits that documented plaintiff's daily three to four-mile walks, which appear to be at odds with his complaints of inability to use the ankle on a repetitive basis in the work environment.

In sum, the undersigned finds that plaintiff's sole assignment of error lacks merit, and that the ALJ's RFC is supported by substantial evidence.  Plaintiff did not assert any additional assignments of error with respect to the remaining steps of the sequential evaluation process, and the court discerns none.

## **Conclusion**

The ALJ in this case was tasked with determining whether plaintiff was disabled.  In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence.  The evidence by no means was uniform and could have supported a different outcome.  Such conflicts in the evidence, however, are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  **This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence**

---

[9] Plaintiff speculates that the missing FCE might have been prepared at the behest of an insurance company with an incentive to minimize the severity of his ankle injury.  This argument, however, cuts both ways.  It just as easily could be said that plaintiff obtained the independent medical examination from Dr. Davis to bolster his workers' compensation claim, which was resolved only one month after his visit to Dr. Davis.  *See* Tr. 123-124.

[10] "[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985).

19

**weighs against the Commissioner's decision."**  *Newton v. Apfel,* 209 F.3d 448 (5th Cir. 2000). The limited and lone issue before the court is whether the Commissioner's determination that plaintiff was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error.   Upon review, the court is satisfied that the Commissioner's decision meets these requirements.   Accordingly

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of January 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE